

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/04/2017

| | |
|---|---|
| IN RE: § <br> GOODRICH PETROLEUM § <br> CORPORATION, *et al* § <br>     Debtor(s) § <br> § | CASE NO: 16-31975 <br><br> CHAPTER 11 |
| CAROLYN JULIA CLARK, *et al* § <br>     Plaintiff(s) § <br> § <br> VS. § <br> § <br> GOODRICH PETROLEUM COMPANY, § <br> L.L.C., *et al* § <br>     Defendant(s) § | ADVERSARY NO. 16-3149 |

## MEMORANDUM OPINION

8587 BRR LLC; The Cibolo Seven, Ltd., Patrick Burns Clark, Trustee of the Patrick Burns Clark 2012 Irrevocable Trust; Richard Burns Clark, Trustee of the Richard Burns Clark Family 2011 Trust; and Walter Edwin, LP (collectively known as the "Additional Defendants") moved the Court to realign them as plaintiffs rather than defendants in this adversary proceeding. The Court grants the Additional Defendants' motion.

### Background

From February to March 2010, the Burns family, which owns the mineral estate and royalty rights to the oil and gas underlying Burns Ranch, executed three oil and gas leases covering a single 24,824.78 acre tract of land. (ECF No. 75 at 5). The first lease was executed with BB-II Operating, L.P. as lessee in February 2010. (ECF No. 75 at 5). Chesapeake Exploration, LLC then entered into two leases with the Burns family, the first in March and the second in May 2010. (ECF No. 75 at 5-6). In the ensuing years, a series of assignments gave several new lessees a working interest in the mineral estate, including: Goodrich Petroleum

Company, LLC; USG Properties Eagle IV, LLC; Blackbrush Oil & Gas, LP; OOGC America, LLC; Jamestown Resources, LLC; EP Energy E&P Company, LP, Eagle Ford Gas 5, LLC; and Carrizo Eagle Ford, LLC. (ECF No. 75 at 6-7). Despite the proliferation of lessees on this tract of land, the original three leases executed between the Burns family, BB-II, and Chesapeake control the calculation and payment of royalties. (ECF No. 75 at 7).

In 2013, the Burns began to question whether they were receiving the proper amount of royalties due under Goodrich's interest in the leases. (ECF No. 75 at 8). The Burns family initially requested an accounting from Goodrich, but when Goodrich failed to respond, the request escalated into an audit. (ECF No. 75 at 9). Once the audit was complete, the Burns family believed that they were due unpaid royalties from Goodrich based on the amount of oil and gas produced. (ECF No. 75 at 10). However, during this time, Goodrich was simultaneously engaged in talks with EP Energy to assign its interest in the Lease but could not finalize the assignment without the Burns' approval. (ECF No. 75 at 9-10). The Burns family demanded that Goodrich provide assurances for the payment of past due royalties before they would consent to an assignment. (ECF No. 75 at 10). The parties signed a letter of agreement stating that Goodrich would pay for delinquent royalties as well as reimburse the Burns' costs of audit and collection. (ECF No. 75 at 10-11). Although Goodrich complied with the payment of royalties, it failed to deliver the reimbursement to the specified escrow account and the Burns family accordingly refused to consent to Goodrich's assignment to EP Energy. (ECF No. 75 at 12).

The audit remained open and the Burns family alleges significant underpayments exist that eventually culminated in this adversary proceeding. (ECF No. 75 at 12-13). The Burns family seeks a declaratory judgment with regard to the amount of royalty owed, their rights to

terminate the Leases, and reasonable attorney's fees. (ECF No. 75 at 15-16). Shortly after the Burns family filed their complaint, EP Energy filed a motion to dismiss, citing Federal Rule of Civil Procedure 19 and the Burns family's failure to join necessary parties. (*See generally* ECF No. 26). EP Energy's motion alleged that the Burns family could not achieve complete relief without the Additional Defendants, since the Additional Defendants were a party to the original leases and are contractually entitled to 25% of the disputed royalty amounts. (ECF No. 26 at 4).

On June 12, 2017, the Court held a hearing on EP Energy's motion to dismiss and ordered the parties to amend their complaints and motions to include the Additional Defendants. The Court sought to provide the parties with notice regarding the proceedings that may affect their rights with regard to their royalty interests. The parties complied and the Additional Defendants now move the Court to realign them as plaintiffs to "reflect the true positions of the parties and avoid confusion and anomalies in pleading." (ECF No. 99 at 2). Similar to the Burns family, the Additional Defendants have also filed cross-claims against the various oil and gas companies seeking their portion of the unpaid royalties due under the Leases. (*See generally* ECF No. 98).

## Jurisdiction

The district court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## Analysis

A motion to realign parties is most commonly employed to obtain diversity jurisdiction in cases where a court must "look beyond the pleadings, and arrange the parties according to the sides in the dispute." *Zurn Indus., Inc. v. Acton Const. Co., Inc.*, 847 F.2d 234, 236 (5th Cir. 1988) (quoting *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 (1941)).

Courts also realign parties for reasons other than jurisdiction. In *Ferko v. Nat'l Ass'n of Stock Car Racing*, Inc., Ferko sued NASCAR in a derivative suit because NASCAR failed to schedule a second auto race with the Texas Motor Speedway (TMS) pursuant to a contract between NASCAR and TMS. 216 F.R.D. 392, 393 (E.D. Tex. 2003). Ferko claimed that this failure deprived it of revenue owed to it as a shareholder in TMS. *Id*. NASCAR subsequently filed a motion to realign the parties and name TMS as a plaintiff rather than a defendant, claiming that no antagonism existed between Ferko and TMS and that TMS should prosecute its own rights under the contract. *Id*. The court denied NASCAR's motion holding that "the touchstone issue for the court to decide is whether there is 'antagonism' between plaintiff Ferko and nominal defendant Speedway." *Ferko*, 216 F.R.D. at 393 (citing *Smith v. Sperling*, 354 U.S. 91, 96 (1957)). In this case, realignment was improper because TMS's failure to pursue its contractual rights against NASCAR due to its fear of reprisal demonstrated the antagonism between Ferko and TMS. *Id*. at 394.

Courts also examine the responsibilities of and burdens on the parties in deciding whether realignment is appropriate. In *In re Imel*, the United States objected to a debtor's discharge due to unpaid taxes and a motion was filed to realign the United States as a plaintiff rather than as a defendant. 169 B.R. 37, 39 (Bankr. W.D. Tex. 1994). The court granted the motion, reasoning that, as the party objecting to the discharge, the United States should bear the burden of proof as a plaintiff rather than require that another party prove the United States' case. *Id*.

Here, the Additional Defendants were brought into the case as necessary parties and the term "Additional Defendants" was initially used to ensure they did not face any burden of proof or production with regard to the pending motions. However, subsequent events demonstrate that the Additional Defendants are actually adverse to the original oil company lessees who were

named as defendants. The Additional Defendants clearly demonstrated antagonism by filing cross-claims against the lessees alleging unpaid royalties. Furthermore, by filing these cross claims, the Additional Defendants also assumed the burden of proof, aligning their interests and responsibilities with the original plaintiffs seeking the same remedy. Accordingly, the Additional Defendants are realigned in this case as "Realigned Plaintiffs" in order to more accurately reflect their position in this case.

### Conclusion

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **October 3, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE